**In re the MARRIAGE OF Christina Sue BERTZ and Wayne Edward Bertz.**

**Christina Sue BERTZ, Appellant,**

v.

**Wayne Edward BERTZ, Respondent.**

**No. 18491.**

Missouri Court of Appeals,
Southern District,
Division One.

July 13, 1993.

J. Russell Carnahan, Carnahan, Carnahan & Hickle, Rolla, for appellant.

Jerry L. Wilkerson, Wilkerson & Seay, Salem, for respondent.

CROW, Presiding Judge.

▪ Christina Sue Bertz ("Mother"), ex-wife of Wayne Edward Bertz ("Father"), appeals from an order transferring primary physical custody of their two minor children from her to him. She presents two assignments of error. We address her second one first. It avers the trial court "failed to satisfy a jurisdictional requirement in that a guardian ad litem was not appointed for the minor children in this action even though there were allegations of abuse and/or neglect in the pleadings and evidence."

Section 452.423.1 [1] reads:

> In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

The parties' marriage was dissolved by a decree entered September 3, 1986. The decree awarded the parties "joint custody" of their two children, Jonathan Wayne Bertz (born May 5, 1984), and Patricia Jenny Bertz (born April 5, 1985), with Mother to have "primary physical custody and control of said ... children." The decree was subsequently modified by an order granting Mother permission to move the children from Dent County to St. Francois County.

On January 7, 1992, Father filed a motion seeking transfer of primary physical custody of the children from Mother to him. We find no allegation of child abuse or neglect in Father's motion, and Mother does not identify any such averment.

On March 19, 1992, Mother filed a "cross-motion" to modify. It contained one allegation which, according to Mother, pled child abuse or neglect. The allegation is:

> [Father] consumes excessive amounts of alcohol when caring for and in the presence of said minor children.

Nothing in the record indicates Mother ever suggested to the trial court that a guardian ad litem be appointed for the children.

The issues were tried August 13, 1992. Mother cites the following evidence which, according to her, demonstrates Father abused the children. The lone source of the evidence was Mother's testimony.

She described an incident that occurred at Father's home around March 1, 1992. As we understand the narrative, Mother had gone there the preceding day to visit the children and had stayed overnight. She testified:

It was a Sunday morning and nobody was really running late, kind of overslept; and me and Jenny didn't hop out of bed when [Father] said, "Let's go. Let's get up. Let's get ready." And then went in the kitchen and just like rush, rush, rush. And I said something to him; and he just told me, "Get the hell out," and if I didn't shut up or whatever, that he'd call the police because I could be arrested because of that restraining order; and then he started to reach for the phone, like I told him to go to hell, I imagine. And he started to reach for the phone, and I reached up to push the receiver in, and he scratched—I still have the scar—in front of my children. And then he'd even push Jenny and pushed her by the neck down the hallway, and they were telling Daddy to leave Mommy alone.

Q. And which child said that?

A. Jonathan. They both did. Jenny was crying, and Jon had told Daddy to leave me alone, "Leave Mommy alone." ... I even went to the doctor because he twisted my wrist. It was swollen and everything.

The other evidence which, according to Mother, shows Father abused the children was Mother's testimony that Father drinks alcoholic beverages in the presence of the children and has driven a motor vehicle with the children as passengers after consuming alcohol.

Mother cites one case in support of her second point, *McCormick v. McCormick*, 807 S.W.2d 556 (Mo.App.S.D.1991). There, one parent's pleading in a proceeding to modify a child custody order alleged the other parent failed to protect the parties' daughter, resulting in sexual abuse and molestation of the child by the latter parent's brother. *Id.* at 557. The record contained evidence the abuse occurred. *Id.* No guardian ad litem was appointed for the child. Applying the 1988 version of § 452.-423.1 (identical to the 1990 version applica-

---

**1.** References to statutes are to RSMo Cum.Supp.    1990, except where otherwise indicated.

ble here), this Court held the failure to appoint a guardian ad litem was reversible error, even though neither party requested such appointment. 807 S.W.2d at 557. The requirement is mandatory where abuse is alleged, and the statute contains no exceptions. *Id.*

The subject was addressed again in *Gilman v. Gilman,* 851 S.W.2d 15 (Mo.App. W.D.1993). There, a dissolution decree awarded custody of the parties' child to the husband. The wife appealed, assigning error in the trial court's failure to appoint a guardian ad litem for the child. The Western District of this Court noted *McCormick's* holding that § 452.423.1 requires appointment of a guardian ad litem if there is any allegation of abuse or neglect in a child custody proceeding. 851 S.W.2d at 17.

In *Gilman,* no allegation of abuse or neglect appeared in any pleading. *Id.* However, the wife maintained the record reflected "evidentiary allegations" by the husband that she abused and neglected the child. In fact, the husband's evidence showed only that she was a poor housekeeper. The opinion noted the housekeeping evidence was not presented by the husband as evidence of child neglect, but only to show the wife was a bad housekeeper and the husband would be a better custodial parent. The Western District held such evidence did not constitute an allegation of neglect within the meaning of § 452.423.1. 851 S.W.2d at 17.

The wife in *Gilman* also argued the record contained allegations of child abuse by the husband stemming from his previous alcohol and drug usage. *Id.* The evidence showed the husband overcame his drug problem before the child was born. *Id.* at 18. The husband admitted he had an alcohol problem during the marriage, but presented evidence he had overcome it. Furthermore, the record contained no evidence the alcohol problem resulted in any abuse toward the child. *Id.* at 18[6].

Finally, the wife in *Gilman* recounted an incident in which the husband came home drunk and got into an altercation with her in the presence of their child and other children. According to the wife, the husband grabbed her by the throat, threw her against a trailer, and drew his arm back to hit her. Their child screamed, "My daddy hit my mom." *Id.* at 18.

The Western District held the fracas was an item for consideration on the issue of the proper custodial parent, but did not constitute an allegation of abuse requiring appointment of a guardian ad litem. *Id.* at 18[7]. The opinion explained:

> Throughout Wife's testimony she describes incidents of fighting between the two parties. They are similar to this event in that Husband's anger is directed at Wife and not [the child]. It is truly unfortunate for any child to witness parents battling with one another. However, the parties and their attorneys did not consider these items to constitute instances of abuse or neglect at the hearing, and did not denominate them as such. The behavior described above does not constitute the abuse contemplated in § 452.423.1, and we hold that the trial court did not err in failing to appoint a guardian ad litem *sua sponte* in this case. It is not realistic to assert that a trial court must regard every item bearing on the fitness of a parent as constituting abuse or neglect. *Id.*

*Gilman's* analysis applies here. There is no evidence Father abused or neglected the children. Indeed, several times during her testimony Mother acknowledged Father is a "good father." The one instance where Father pushed their daughter by the neck was during the imbroglio between Father and Mother, and it is inferable Father's anger was toward Mother, not the daughter. While we adhere to *McCormick's* holding that a guardian ad litem must be appointed in any child custody proceeding where child abuse or neglect is alleged, we hold, as did *Gilman,* that the conduct pled and shown here does not constitute child abuse or neglect within the meaning of § 452.423.1. Mother's second point is denied.

■ Her first point reads:

The trial court erred in transferring custody of the minor children from [Mother] to [Father] because the decision was against the weight of the evidence in that the trial court did not make a specific finding that a change in primary physical custody would be in the best interests of the minor children and that the evidence taken as a whole was not sufficient to support such a finding.

Section 452.410.1 reads:

... the court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child....

At the conclusion of the evidence in the instant case, the trial court made findings which included these:

The Court finds that there has been a change of circumstances since the entry of the decree herein, and the modification thereof, that is so substantial and continuing as to require modification of the original decree, and the order of modification thereof....

The trial court thereupon modified the existing custody arrangement by awarding Mother "primary physical custody" of the children "from one week after the beginning of the children's summer school vacation to one week before the end of said summer school vacation." Father was awarded "primary physical custody of the children for the remainder of the calendar year." The trial court established a schedule for temporary custody on alternating holidays and certain weekends when the other party has primary physical custody.

Mother's first point attacks the modification order on three grounds: (a) it is against the weight of the evidence, (b) the trial court did not make a specific finding

that the modification was necessary to serve the best interests of the children, and (c) the evidence was insufficient to support such a finding.

We first address attack "b." In *Benton v. Benton*, 620 S.W.2d 433 (Mo.App.S.D. 1981), the trial court entered an order modifying an earlier custody decree. The order failed to contain an express finding, in the language of § 452.410, RSMo 1978, "that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." This Court reviewed the evidence, found it sufficient to support such a finding, and held the modification order was not defective merely because it lacked an express recital of the statutory language. 620 S.W.2d at 435–36[4].

■ Here, the trial court found there had been a change of circumstances so substantial and continuing as to require modification of the existing custody arrangement. Applying *Benton*, we hold that if the evidence be sufficient to support a finding that the modification was necessary to serve the best interests of the children, the failure of the modification order to recite such a finding does not require reversal.

We therefore review the record to determine whether the evidence is sufficient to support a finding that the modification was necessary to serve the best interests of the children, the issue raised by attack "c" of Mother's first point. We simultaneously consider whether the modification order is against the weight of the evidence, the issue raised by attack "a" of Mother's first point.

The standard of review in Rule 73.01(c),[2] as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), applies to custody determinations. *Griffin v. Griffin*, 789 S.W.2d 236, 236–37 (Mo.App.S.D. 1990); *Petty v. Petty*, 760 S.W.2d 555, 556[2] (Mo.App.W.D.1988); *R_____ v.*

2. Rule references are to Missouri Rules of Civil Procedure (1993).

**936**

*R____*, 685 S.W.2d 598, 601[1] (Mo.App. S.D.1985). The order of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

In applying the above standard, we are mindful that in this judge-tried case, credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe or disbelieve all, part, or none of any witness' testimony. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[1] (Mo. banc 1989). Accordingly, in determining whether the evidence is sufficient to support the modification order, we accept as true the evidence and inferences from it favorable to such order and disregard contrary evidence. *Id.* at 654[2].

We have carefully studied the 260–page transcript, noting with particularity that by agreement between Mother and Father, the children spent the year preceding trial primarily in Father's custody in Salem. The children did well in school and outside activities there, and attended church with Father on weekends when they were with him.

We have determined the modification order is supported by substantial evidence and is not against the weight of the evidence. We have further determined no error of law appears and an opinion setting forth the evidence in detail would have no precedential value. Accordingly, the modification order is affirmed in compliance with Rule 84.16(b)(1) and (5).

PARRISH, C.J., and SHRUM, J., concur.