**Patricia A. CURLESS, (F.K.A. Patricia Farrell), Petitioner/Appellant,**

v.

**Terry E. FARRELL, Respondent.**

No. 68643.

Missouri Court of Appeals, Eastern District, Northern Division.

June 18, 1996.

David A. Masters, Macon, for Appellant.

Bruce E. Colyer, Osage Beach, for Respondent.

CRANDALL, Judge.

Mother, Patricia A. Curless (F.K.A. Patricia Farrell), appeals from the judgment entered by the trial court against father, Terry E. Farrell, on mother's action for contempt for father's failure to comply with the terms of an agreement regarding child support and for enforcement of the terms of that agreement. We reverse and remand with directions.

The marriage of the parties was dissolved in 1977. The decree of dissolution ordered father to pay $212.00 per month in child support for the two minor children born of the marriage, to maintain medical insurance for the children, and to pay the uncovered medical expenses for the children. By November 1992, father was $39,644.00 in arrears in his child support payments, not including accrued interest; and he also failed to pay certain medical expenses incurred by the children. At that time, mother filed an application for an order to show cause why father should not be held in contempt of court. In January 1993, the parties settled the contempt action and set forth their agreement in a document styled "STIPULATION AND SETTLEMENT AGREEMENT" (agreement).[1] The agreement provided in pertinent part:

1. As of December 21, 1992, [father's] child support arrearage is stipulated to be $10,000.00.

2. [Father] is in contempt of court for wilfully failing to pay court-ordered child support. [Father] should be committed to jail[.] However, [father] should be allowed to purge himself of such contempt by abiding by the following terms and conditions:

\* \* \* \* \* \*

(b) On or before January 20, 1993, [father] shall pay $250.00. This sum represents [father's] obligation for current child support for January, 1993, of $212.00 (for the parties' unemancipated minor child, Amy Farrell), plus an additional sum of $38.00 to be applied toward the child support arrearage.

(c) Subsequently, on or before the 20th day of February, 1993, and continuing on the 20th day of each and every month thereafter until the conditions set forth in Paragraph 2(d) are satisfied, [father] shall pay the sum of $250.00.

(d) Until the parties' child Amy Farrell becomes emancipated pursuant to Missouri law, [father's] monthly payments shall continue to be allocated as $212.00 toward [father's] current support obligation for each particular month, and $38.00 toward the child support arrearage.... Subsequent to the parties' child Amy Farrell

---

1. On appeal, neither party challenges the validity of the agreement. The only issue before us is whether father failed to comply with the terms of the agreement.

becoming emancipated, [father's] monthly payments shall continue in the same sum of $250.00, with the entire amount applied toward the child support arrearage ... both interest and principal.

\*　\*　\*　\*　\*　\*

4. [Father] shall pay, ... as originally ordered by the court, the following past-due medical expenses: [list of ten separate bills totalling $2,071.70]. [Mother] will provide [father] with copies of all bills or other documents evidencing such expenses.

5. If, during the period from January 20, 1993, through January 20, 1994, [father] fails to make any monthly payment on or before the 20th day of each such month exactly as set forth herein, then the child support arrearage amount set forth in Paragraph (1) above, shall be deemed to be $30,000.00, instead of $10,000.00. For purposes of this Paragraph (5) only, [father] is allowed a 20–day grace period from the due dates of the 20th day of each month for the period beginning in February, 1993. (There shall be no such grace period for the first payment due January 20, 1993.)

\*　\*　\*　\*　\*　\*

8. In the event either party breaches any provision of this Stipulation, the non-breaching party shall recover all of her or his attorney fees and court costs incurred in enforcing any aspect of this Stipulation.

In March 1993, the trial court issued its order, incorporating the terms of the agreement therein. The court found father in contempt of court for failing to pay court-ordered child support and committed him to jail; but permitted him to purge himself of contempt if he abided by the terms of the agreement and made all child support payments through the Circuit Clerk of Marion County.

In May 1994, mother filed the present action. Count I sought an order finding father in contempt for failing to pay child support and medical expenses in accordance with the agreement. Count II sought an order to enforce paragraph 5 of the agreement, with the result that the trial court would grant judgment in favor of mother for $30,000.00; and also an order to award her

attorney's fees in accordance with paragraph 8 of the agreement.

After a hearing, the trial court entered its order. As to the contempt count, the trial court found that father was "delinquent in his payment of child support payments" and ordered him to pay $500.00 per month until he became current in his payments, at which point his payments would revert to $250.00. The court also ordered husband to pay specific unpaid medical bills which totalled $421.00. As to the second count, the trial court found that father had complied with the terms of the agreement and the corresponding court order and renewed the judgment for back child support against father in the amount of $10,000.00. The court ordered each party to pay his and her own attorney's fees.

■ The standard of review of a court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). The decree of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony. *Sanders v. Sanders,* 770 S.W.2d 523, 524 (Mo.App.1989).

■ In her first point, mother contends the trial court erred in finding that father had complied with the terms of the agreement regarding child support. She argues that pursuant to the agreement, father's breach required the trial court to enter judgment in her favor in the amount of $30,-000.00, instead of $10,000.00.

Here, the records of the circuit court evidencing father's child support payments reflected that he did not pay child support in 1993 for the months of January, February, March, September, or December. The court records further indicated that in July 1993, the State intercepted father's two income tax refunds totalling $807.00. Father testified that the tax refunds were intended to be applied to payments missed in January, February, and March. There also was evidence

that mother excused the lateness of the payments in January, February, and March; but that she did not acquiesce to the lateness of the September and December payments. Thus, father was in breach of the agreement at least for his failure to timely pay child support in September and December of 1993 in accordance with the agreement.

In addition, father's testimony was that he was "not completely up-to-date" in child support payments. Including the income tax refunds, father paid a total of $2,557.00 for the year 1993 in lieu of the $3,000.00 which the agreement required him to pay.

Although cognizant of the broad deference we accord the trial court, our review of the record leaves us with the belief that the finding of the trial court that father had complied with the child support obligations imposed by the agreement was against the weight of the evidence. Because father did not pay child support in conformity with the agreement, under paragraph 5 of that agreement the amount of the child support arrearage was deemed to be $30,000.00. The trial court erred in finding that father had complied with the agreement and that he owed only $10,000.00. Mother's first point is granted.

■ In her second point, mother asserts the trial court erred in awarding her only $421.00 in medical expenses. She argues the evidence established that the amount of the medical bills father was required to pay under the agreement equalled $2,492.70.

Here, mother's own testimony regarding the unpaid medical expenses was contradictory. Although she testified that she sent the medical bills to father by certified mail which father refused to accept, she also testified that she did not have the actual bills from the medical providers and that she did not send him the bills. The following colloquy occurred regarding the unpaid medical bills:

[Mother]: [Father] told me I had to send the bills to him and he—he would fill out the forms and stuff.

But yes, I did make attempts to get the forms myself.

\* \* \* \* \* \*

[Mother's counsel]: Did you do what he asked? Did you send them to him?

[Mother]: Did I send these—well, I would tell him over the telephone. No, I didn't send the medical.

THE COURT: Your answer was you did not send them on to him?

[Mother]: I did not send them—I didn't have an address exactly....

Father testified that mother did not cooperate with him in providing the information necessary for him to file the claims with his medical insurance carrier.

The evidence concerning the medical bills was muddled at best. From the evidence before it, the trial court had the prerogative to believe that mother did not comply with paragraph 4 of the agreement, which required her to furnish "copies of all bills or other documents evidencing such [medical] expenses." Because mother failed to provide father with adequate information to file the claims with his insurer, the trial court did not err in failing to award mother the full amount she requested for unpaid medical expenses. Mother's second point is denied.

■ In her final point, mother challenges the trial court's failure to award her attorney's fees incurred in prosecuting the present action.

■ Generally, Missouri law requires each litigant to pay his or her own attorney's fees unless otherwise provided by contract or statute. *Palmer v. Hobart Corp.*, 849 S.W.2d 135, 143 (Mo.App. E.D.1993). Paragraph 8 of the agreement at issue authorized the non-breaching party to recover attorney's fees incurred to enforce the agreement.

Here, mother was the party seeking to enforce the agreement against father who failed to comply with the terms of the agreement with respect to the payment of child support. Pursuant to paragraph 8, mother was entitled to recover the attorney's fees she incurred to enforce the agreement. The trial court erred in failing to award her attorney's fees. Wife's third point is granted.

The judgment of the trial court is reversed and the cause is remanded with directions to

proceed in a manner consistent with this opinion.

CRANE, C.J., and HOFF, J., concur.