**August SIGMAN (Plaintiff), Respondent,**

v.

**Alex E. RUBELING (Defendant), Appellant.**

**No. 28892.**

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1954.

Charles E. Schaffner, St. Louis, George F. Heege, Clayton, and John H. Martin, St. Louis, for appellant.

John T. Sluggett, III, Clayton, for respondent.

BENNICK, Judge.

This is an action for damages for the alleged breach of an agreement not to foreclose under a deed of trust.

Upon a trial to a jury a verdict was returned in favor of plaintiff, and against defendant, for the sum of $2,500. Judgment was entered in accordance with the verdict; and following an unavailing motion for a new trial, defendant gave notice of appeal, and by proper successive steps has caused the case to be transferred to this court for our review.

Plaintiff, August Sigman, acquired his interest in the property on October 8, 1945, by general warranty deed executed by defendant, Alex E. Rubeling, and his wife, Mabel N. Rubeling, to him and his then wife, Mary L. Sigman, as tenants by the entirety. The property consisted of 7 unimproved contiguous lots located in a subdivision known as Hollywood Park in Normandy, St. Louis County.

The purchase price of the property was the sum of $1,750, of which plaintiff paid $50 in cash, and for the balance of which he and his wife, Mary L. Sigman, executed a series of 36 negotiable promissory notes of even date, payable to defendant in monthly installments. Each note except the last was for the principal sum of $20, with interest of $8.50 in the case of the first note, which was thereafter decreased in the amount of 10¢ in each succeeding note through the 35th. The last or 36th note in the series, due October 8, 1948, was for the sum of $1,005.

As security for the payment of the notes plaintiff and his wife, Mary L. Sigman, executed a deed of trust upon the property to one Grover W. Devine, as trustee, with defendant alone named as beneficiary. The deed of trust contained the usual provision, among others, that whenever any one of the series of notes should not be paid at its maturity, all of the remaining notes should immediately become due and payable at the option of the holder of the notes.

After acquiring the property plaintiff built a 2-room house upon it, and moved into the house upon its completion.

Plaintiff was divorced from Mary L. Sigman during 1946, and then married Betty Ray Sigman on May 2, 1948. Upon his divorce from Mary L. Sigman there was no conveyance or legal transfer to him of her interest in the property.

It was shown that plaintiff paid the first 17 notes covering the period up to March 8, 1947, and that in the course of a discussion he had with defendant around that time, the latter inquired why he did not make an addition to the 2-room dwelling which had been erected on the property. Plaintiff replied that if he should undertake such an improvement, he would lack the means to continue his payments on the notes, whereupon defendant assured him that if he would go ahead and make the improvement, he would not ask for the monthly payments.

Acting upon the understanding reached with defendant, plaintiff proceeded to add the 2 rooms, but for the time being made no further payments on his notes.

In October, 1949, having in the meantime acquired some $800 to his account, plaintiff called upon defendant for the purpose of once again taking up the payment of his obligations. In this conversation defendant expressed concern as to why plaintiff did not build a "nice" house on the property in view of the fact that the surrounding neighborhood was being substantially improved. Plaintiff answered that he had had in mind to build a 7-room house, but would be compelled to arrange for credit. Defendant then asked him whether, if he should erect such a house, he would be in a position to start payments on his notes after a period of 3 years, and upon being told that he would, defendant informed him that he should build the 7-room house on the property; that in return for this defendant would allow him a period of 3 years before he would be required to resume payments on his notes; and that during such period of 3 years defendant would not foreclose under the deed of trust.

Plaintiff's second wife, Betty Ray Sigman, was present at the conference between plaintiff and defendant, and corroborated plaintiff in all substantial respects regarding defendant's promise of forbearance.

Defendant denied any such agreement, thus raising an issue for the jury, which was resolved by their verdict in favor of plaintiff's version of the facts.

In reliance upon the agreement plaintiff began the erection of a 7-room building, which had not been fully completed when defendant, in disregard of his promise, instructed Devine, the trustee, to commence foreclosure proceedings under the power of sale contained in the deed of trust. The sale was held on June 25, 1951, far short of the expiration of the period of 3 years, and the property was bid in by defendant himself, with title placed temporarily in the name of Marion Hubbard. Later, on July 20, 1951, the property was conveyed by Marion Hubbard to Thomas J. Schulz and Alma P. Schulz, his wife.

Meanwhile, by letter dated June 27, 1951, plaintiff was notified by defendant that the deed of trust had been foreclosed on account of his being in default in his payments, and that he would be expected to vacate and surrender the premises. A similar letter was sent plaintiff on July 25, 1951, by a representative of Mr. and Mrs. Schulz. Plaintiff did vacate the premises on or about September 15, 1951. This action for damages for defendant's breach of his agreement not to foreclose was thereafter instituted and tried to the result already indicated.

Plaintiff counted upon the facts about as we have related them for the statement of his claim, to which defendant answered by a bare general denial.

Defendant does not question the fact that the breach of an agreement not to foreclose, where the agreement is supported by a valuable consideration, may give rise to a claim or cause of action for damages occasioned by the breach, regardless of any other remedy that the injured party might have been entitled to assert. Missouri Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S.W. 1006. He insists, however, as a matter of chief concern, that plaintiff has no such cause of action under the facts of the instant case.

The effect of the divorce which plaintiff obtained from his first wife, Mary L. Sigman, was to destroy the tenancy by the entirety under which they had owned the property, and to transform their status into that of tenants in common. Murawski v. Murawski, Mo.Sup., 203 S.W.2d 714; Tureck v. Tureck, Mo.App., 207 S.W.2d 780. The consequence of such change was to vest in each of them an undivided one-half interest in the property. Hiatt v. Hiatt, Mo.Sup., 168 S.W.2d 1087; Tureck v. Tureck, supra.

Defendant now argues that inasmuch as Mary L. Sigman had never transferred her undivided interest in the property to plaintiff, she was a necessary and indispensable party to this action, and that plaintiff, individually, had no cause of action to assert. Consequently defendant contends that the court committed error in refusing his motions for a directed verdict and in submitting the case to the jury by plaintiff's instructions Nos. 1 and 2.

It is interesting to observe in this connection that after the case had been pending for quite some time, an amended petition was filed in which Mary L. Sigman was joined as a party plaintiff. However thinking better of it, she shortly withdrew from the case, whereupon plaintiff refiled his original petition, which was of course predicated upon the theory of a complete cause of action in himself alone.

Incidentally, defendant's only objection in the court below to Mary L. Sigman's nonjoinder as a party plaintiff came in his motion for a new trial, which was too late to preserve the point, if it was one that could be waived. Todd v. Fitzpatrick, Mo.App., 222 S.W. 888. The provisions of the new civil code have not in anywise done away with the necessity, so well established under the former practice, that one who objects upon the ground of defect of parties must raise his objection in a timely, appropriate, and specific manner, which, under the new code, is by motion or answer or reply. Section 507.050 RSMo 1949, V.A.M.S.; Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132. Under the present

practice as before, any question of mere defect of parties is waived by going to trial upon a bare general denial. Stone v. McConnell, Mo.Sup., 187 S.W. 884; Anderson v. Hall, Mo.Sup., 188 S.W. 79.

 In view of defendant's failure to have raised the question of Mary L. Sigman's nonjoinder by motion or answer in the lower court, plaintiff suggests that any complaint growing out of her nonjoinder has therefore been waived so as not to be cognizable on this appeal. However plaintiff is mistaken in this contention for the reason that the matter urged by defendant is actually not one of mere defect of parties, but of the existence of the cause of action which plaintiff has undertaken to assert. The rule that a defect of parties plaintiff is waived by failure to raise the objection by motion or answer does not apply to those cases where the defect is such as to preclude the plaintiff's right to maintain a cause of action in himself alone. Elmer v. Copeland, Mo.App., 141 S.W.2d 160. In this situation the question becomes one of the legal sufficiency of the petition to state a claim upon which relief can be granted, which is of course a question that can even be raised for the first time on appeal. Gruender v. Frank, 267 Mo. 713, 719, 186 S.W. 1004; Elmer v. Copeland, supra.

So far as the merits of the question are concerned, it is defendant himself who is this time mistaken.

 While there is no doubt of the general rule that tenants in common must join together in all personal actions concerning the common property, 86 C.J.S., Tenancy in Common, § 142, this is not such a case, nor is Mary L. Sigman a party to the controversy which does exist, which is purely between plaintiff and defendant, growing out of the latter's breach of an agreement which he had entered into with plaintiff alone. Moreover the effect of the foreclosure was to extinguish the tenancy in common, 86 C.J.S., Tenancy in Common, § 14, upon the assumed existence of which defendant relies as the basis for his contention that Mary L. Sigman was a necessary and indispensable party to the present action. On the contrary, she has no interest whatever in the maintenance of the action, which was necessarily limited in the lower court to the recovery of the damages which plaintiff had himself sustained by reason of defendant's disregard of his promise not to foreclose.

Defendant's other complaint is that it was error for the court to refuse his requested instruction No. 6, which would have told the jury that plaintiff was not entitled to recover if he was in arrears for taxes at the time of the foreclosure, and if it was because of such delinquency in the payment of taxes that the foreclosure was had.

The deed of trust had imposed the duty upon plaintiff to pay all taxes due, and he had admitted his default for the years 1945 to 1950.

There is a question whether the defense set up by defendant's requested instruction No. 6 was actually available under the pleadings, but in any event it was adequately presented under defendant's given instruction No. 3.

This instruction told the jury that if defendant only agreed not to foreclose upon the ground of nonpayment of the notes, and made no such agreement with respect to the nonpayment of delinquent taxes, he was entitled to foreclose, and plaintiff could not recover.

 Even if a requested instruction is correct, it is not error to refuse it where, as here, the same issue is fully covered by one of the given instructions. Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907; Bean v. City of Moberly, 350 Mo. 975, 169 S.W.2d 393; Homan v. Missouri Pac. R. Co., 335 Mo. 30, 70 S.W.2d 869.

The judgment rendered by the circuit court should be affirmed, and it is so ordered.

ANDERSON, P. J., and WEINSTEIN, Special Judge, concur.